IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Andrea PADLEY | * | |
| | * | |
| v. | * | Civil No. CCB-12-890 |
| | * | |
| SUNTRUST MORTGAGE, INC. | * | |
| | * | |
| | * | |
| | ****** | |

## MEMORANDUM

Plaintiff Andrea Padley brings this diversity action against defendant SunTrust Mortgage, Inc. for claims related to a foreclosed mortgage on Padley's home. Padley alleges that SunTrust, as servicer of the mortgage, violated various provisions of the Maryland Consumer Protection Act, the Maryland Consumer Debt Collection Act, and the Maryland Mortgage Fraud Protection Act when SunTrust sent a deficient Notice of Intent to Foreclose and failed to respond to Padley's "short sale offers." Pending before this court is SunTrust's motion to dismiss for failure to state a claim. The issue is fully briefed,[1] and no hearing is necessary. *See* LR 105.6. The motion will be granted for the reasons stated below, and the suit will be dismissed.[2]

## BACKGROUND

According to the complaint, on or about June 28, 2006, Padley and her partner purchased a home in Annapolis, Maryland. (Compl. ¶¶ 6, 44, ECF No. 1.) To finance the purchase, Padley entered into two loans with SunTrust in the amounts of $264,000 (the "first loan") and $66,000 (the "second loan"). (Compl. ¶ 44.) SunTrust subsequently sold the first loan to the Federal

---

[1] After the parties filed their briefs, the Maryland Court of Appeals issued its opinion in *Shepherd v. Burson*, 50 A.3d 567 (Md. 2012). This court invited the parties to file supplemental memoranda addressing the extent to which *Shepherd* affects the issues in this case. Both Padley and SunTrust filed appropriate memoranda on February 8, 2013.
[2] Padley's request for leave to file an amended complaint is denied for the reasons set forth at the end of this opinion.

Home Loan Mortgage Corporation, commonly known as Freddie Mac. (Compl. ¶45.) Although SunTrust retained responsibility for servicing the first loan, Freddie Mac assumed the risk of default on that loan. (Compl. ¶ 45.) SunTrust retained ownership of the second loan.

Sometime before June 2009 Padley began to experience financial hardship.[3] (Compl. ¶ 46.) At that time she engaged a realtor to explore the possibility of selling the property, and she also engaged counsel to assist her in offering SunTrust a "qualified short sale" of the property. (Compl. ¶¶ 46-47.) Mortgagors (homeowners) and mortgagees (lenders) sometimes engage in short sales when the mortgagor becomes delinquent on the mortgage payments and is unable to repay the amount owed on the mortgage. (Compl. ¶ 48.) When both the mortgagor and mortgagee agree to a short sale, the property is sold at market value—a price lower than the amount owed by the mortgagor on the mortgage—and the mortgagee agrees to accept that "short" amount in full satisfaction of the mortgage. (Compl. ¶ 48.)

In this case, over the course of one year Padley allegedly presented five different short sale offers to SunTrust, and SunTrust failed to respond to each offer. In July 2009, for example, Padley alleges that a potential buyer offered to pay $260,000 to purchase the home. (Compl. ¶ 50.) Padley claims that her attorney presented this offer to SunTrust, together with all information required by SunTrust and Freddie Mac. (Compl. ¶ 50.) SunTrust purportedly rejected the offer because the short sale would have inured to the benefit of Freddie Mac, as the owner of the senior first loan, and would have required SunTrust to write off the entire outstanding balance of the subordinated second loan. (Compl. ¶ 51.) Padley alleges that SunTrust failed to respond to the proposal before the potential homebuyer withdrew the offer. (Compl. ¶ 50.) Padley's attorney allegedly presented similar short sale offers, and all required

---

[3] SunTrust received Padley's last loan payment on July 1, 2009.

2

documentation, to SunTrust in October 2009, January 2010, April 2010, and November 2010. (Compl. ¶¶ 52-59.) The amount of each respective offer was $270,000, $260,000, $285,000, and $235,000. According to the complaint, SunTrust failed to respond to each of these offers because Freddie Mac, rather than SunTrust, would have been the sole beneficiary of each short sale. (Compl. ¶¶ 53, 55, 58, 60.)

Padley alleges that Universal Appraisal Services, Inc. appraised the home on February 1, 2010, and determined its value to be $270,000. (Compl. ¶ 56.) She provided this information to SunTrust in connection with the January 2010 offer, to no avail. (Compl. ¶ 56.) Instead, counsel for SunTrust sent a Notice of Intent to Foreclose ("NOITF") to Padley on February 10, 2010. (Compl. ¶ 61.) The NOITF represented that SunTrust was the "secured party of Ms. Padley's mortgage loan," and the notice included neither the name nor address of Freddie Mac, which Padley contends to be "the true secured party." (Compl. ¶¶ 61-62.)

SunTrust, through its trustees, filed a foreclosure action against Padley's home in April 2010 in the Circuit Court for Anne Arundel County. (Compl. ¶ 64.) Accompanying the foreclosure filing was an "Affidavit Certifying Ownership of Debt Instrument And That Copy Of Note Is A True And Accurate Copy." (Compl. ¶¶ 8, 65; Def.'s Mot. Dismiss Ex. 3, ECF No. 10-4.) This affidavit, signed by an assistant vice president at SunTrust, certified that "Federal Home Loan Mortgage Corporation is the owner of the loan evidenced by the Note and has authorized SUNTRUST MORTGAGE, INC. to be the holder of the Note for purposes of executing this affidavit and conducting this foreclosure action." (Def.'s Mot. Dismiss Ex. 3.) The plaintiffs in the foreclosure action docketed the affidavit, posted a copy on Padley's home, and sent another copy to Padley by certified mail on May 19, 2010. (*Id.* at 6.) Padley learned of Freddie Mac's ownership through this affidavit. (Compl. ¶ 8).

SunTrust executed a foreclosure sale of the property in November 2010 for $183,500, and settlement occurred in June 2011. (Compl. ¶ 69.) Because the price paid at the foreclosure sale was less than the amounts Padley owed to SunTrust and Freddie Mac on the two loans, that sale resulted in a deficiency. Padley contends that SunTrust's rejection of the short sale offers increased the amount of the deficiency, damaging her credit. (Compl. ¶ 73.) She further alleges that SunTrust has charged her various fees and costs associated with the foreclosure, and she claims that she has been denied credit because of the outstanding deficiency. (Compl. ¶ 73.)

Padley filed this putative class action on March 22, 2012, on behalf of herself and all others similarly situated. The complaint includes six counts. The first four, each of which seeks relief on behalf of the putative class, relate to the allegedly deficient NOITF. Count one alleges deceptive and misleading statements in violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 *et seq.* (Compl. ¶¶ 88-95.) Count two alleges violations of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-202(8). (Compl. ¶¶ 96-99.) Count three alleges violations of the Maryland Mortgage Fraud Protection Act, Md. Code Ann., Real Prop. § 7-402. (Compl. ¶¶ 100-10.) Count four seeks declaratory relief and an injunction vacating all foreclosure sales instituted by SunTrust based on a deficient NOITF. (Compl. ¶¶ 111-19.) Count four also asks this court to certify the class pursuant to Federal Rule of Civil Procedure 23(b). (Compl. ¶ 119.) The fifth and sixth counts, which are filed only on behalf of Padley individually, relate to the short sale offers that Padley presented to SunTrust. Count five contends that SunTrust violated the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 *et seq.*, when SunTrust allegedly failed to respond to the short sale offers. (Compl. ¶¶ 120-28.) Count six alleges various instances of mortgage fraud in violation of the Maryland Mortgage Fraud Protection Act, Md. Code Ann., Real Prop. § 7-401 *et seq.*

(Compl. ¶¶ 129-38.)  Padley seeks total damages in excess of $310,000 for herself and $30,000,000 for the class, as well as injunctive relief, attorney's fees, and costs.

## STANDARD

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  The court "may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (internal citations omitted).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  The plaintiff's obligation thus is to set forth sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions."  *Id.* (internal quotation marks and alterations omitted).  It is not sufficient that the well-pled facts create "the mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court

could draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## ANALYSIS

I.   Sufficiency of the NOITF

Maryland law requires "the secured party" to notify both the mortgagor[4] and the record owner of its intent to foreclose a mortgage on residential property at least forty-five days before filing the foreclosure action in state court. Md. Code Ann., Real Prop. § 7-105.1(c)(1). The notice, known as a Notice of Intent to Foreclose ("NOITF"), must include, among other information, the name and telephone number of the secured party, the mortgage servicer, and an agent of the secured party authorized to modify the terms of the mortgage. *Id.* § 7-105.1(c)(4)(ii). Padley acknowledges that she received a NOITF from SunTrust's attorney more than forty-five days before SunTrust filed its foreclosure action, but she claims that the NOITF was deficient because it did not include the name and address of Freddie Mac, which she alleges to be the owner of her mortgage. SunTrust, on the other hand, argues that a NOITF need not identify the owner of the mortgage; according to SunTrust, a NOITF needs only to include the name and telephone number of one secured party, and SunTrust argues that the term "secured party" includes "'the holder of a note secured by a deed of trust.'"  (Mot. Dismiss 6 (quoting Md. R. 14-201(b)(10) (2008))).

The Maryland Court of Appeals recently addressed a substantially similar issue in *Shepherd v. Burson*, 50 A.3d 567 (Md. 2012). Confronted with the situation where the NOITF sent to the mortgagor identified the name of the mortgage servicer but omitted the identity of the

---

[4] As in *Anderson v. Burson*, 35 A.3d 452, 454 n.1 (Md. 2011), this opinion uses the term mortgage (and associated terms such as mortgagor and mortgagee) to encompass both mortgages and deeds of trust while recognizing there are important differences between mortgages and deeds of trust that are not relevant in this case.

owner of the loan, the Court of Appeals concluded that section 7-105.1(c)(4)(ii) of the Maryland Real Property Article requires the identification of "all secured parties—particularly any that will share in the proceeds of a foreclosure sale—in the Notice of Intent to Foreclose." *Id.* at 576. The court noted that "[i]dentification of the secured party in addition to the servicer can be important as servicers sometimes can have different incentives than the owners of a debt with respect to the desirability of negotiating a loan modification." *Id.* at 576 n.15.

In *Shepherd*, however, the Court of Appeals rejected the plaintiff's characterization of the NOITF as "deceptive" and "misleading," concluding instead that the NOITF had been merely "incomplete." *Id.* at 576. The court further rejected the plaintiff's request to dismiss the foreclosure action, despite the deficient NOITF, because the NOITF had provided the plaintiff with the name and telephone number of an individual authorized to modify the terms of her loan and because the identity of the loan's owner had been disclosed to the plaintiff at least four months before the scheduled foreclosure sale. *Id.* at 577. In determining that the plaintiff had not been significantly prejudiced by the omission of the owner's identity from the NOITF, the court found it illuminating that the plaintiff did not move to dismiss the foreclosure action until more than one year after she learned the loan owner's identity, and the plaintiff never "suggested what she would have done differently had Freddie Mac also been identified earlier as a secured party in the [NOITF]." *Id.*

The NOITF sent to Padley undoubtedly was incomplete, as it failed to identify Freddie Mac, a secured party, as the owner of the mortgage. Like the plaintiff in *Shepherd*, however, Padley learned the true identity of the loan's owner more than four months before SunTrust executed the foreclosure sale. When SunTrust filed the foreclosure action in the Circuit Court for Anne Arundel County in April 2010, it submitted an "Affidavit Certifying Ownership of

7

Debt Instrument And That Copy Of Note Is A True And Accurate Copy." (Compl. ¶¶ 8, 65; Def.'s Mot. Dismiss Ex. 3.) This affidavit, signed by an assistant vice president at SunTrust, certified that "[Freddie Mac] is the owner of the loan evidenced by the Note and has authorized SUNTRUST MORTGAGE, INC. to be the holder of the Note for purposes of executing this affidavit and conducting this foreclosure action." (Def.'s Mot. Dismiss Ex. 3.) In addition to docketing the affidavit in the foreclosure action, to which Padley was a party, the trustees in the foreclosure action posted the affidavit on her home and sent a copy to her by certified mail no later than May 19, 2010. (*Id.* at 6.) Padley acknowledges that she learned of Freddie Mac's ownership through this affidavit, (Compl. ¶ 8), and she therefore had notice of the identity of the loan's owner at least six months before the foreclosure sale occurred in November 2010.

This fact proves fatal to the first four counts of Padley's complaint. Just as the *Shepherd* plaintiff never "suggested what she would have done differently had Freddie Mac also been identified earlier as a secured party in the [NOITF]," *Shepherd*, 50 A.3d at 577, Padley's allegations belie her assertion that she would have negotiated directly with Freddie Mac had she known its identity. Padley allegedly received two short sale offers between April 2010, when the foreclosure action was filed, and November 2010, when the foreclosure sale occurred: an offer for $285,000 in April 2010 and an offer for $235,000 in November 2010. Padley objects to the deficient NOITF because it prevented her from presenting the short sale offers directly to Freddie Mac, which she did not realize to be the true owner of her home loan. She alleges that Freddie Mac, as owner of the senior first loan, had a greater incentive to renegotiate the terms of her mortgage than SunTrust, which owned only the subordinated second loan. (*See, e.g.*, Compl. ¶¶ 51, 53, 55, 58, 60.) According to the complaint, however, Padley never attempted to negotiate directly with Freddie Mac—even after SunTrust notified Padley that Freddie Mac owned the

8

loan. Despite learning of Freddie Mac's ownership interest in April or May 2010, Padley continued to present her short sale offers only to SunTrust, "in reliance on SunTrust's representations that it would honestly and fairly consider short sale efforts as part of its loss mitigation efforts." (Compl. ¶ 59.) Padley, like the *Shepherd* plaintiff, cannot maintain that she was injured by the omission of Freddie Mac's identity when she did not alter her conduct after learning that Freddie Mac, rather than SunTrust, owned the first loan.

Padley erroneously contends that the outcome of this litigation turns on whether SunTrust was a "holder of note secured by a deed of trust" as that term was used in Maryland Rule 14-201(b)(10) (2008), on which the *Shepherd* court relied when defining the term "secured party."[5] A person or entity to which a note is transferred is not considered a "holder" unless the transferor delivers possession of the note to the transferee and indorses the note. *Anderson v. Burson*, 35 A.3d 452, 461 (Md. 2011) (citing Md. Code Ann., Com. Law § 3-203(a)–(b); *id.* § 3-201(a)–(b) & cmt. 1). Because Freddie Mac allegedly never indorsed the note when it transferred the servicing rights to SunTrust, it is plausible, as Padley claims, that SunTrust was not a holder of the note and thus should not have been listed as a secured party. Yet, notwithstanding the plausibility of Padley's argument, she cannot overcome the fact that she has failed to allege any actual injury.

In counts one through four Padley asserts claims under the Maryland Consumer Protection Act, the Maryland Consumer Debt Collection Act, and the Maryland Mortgage Fraud Protection Act. Each of these statutes, however, requires the plaintiff to allege actual injury or loss. *See Citaramanis v. Hallowell*, 613 A.2d 964, 969 (Md. 1992) (stating that a private

---

[5] In *Shepherd* the plaintiff argued that the mortgage servicer was not a "holder of the note" and thus was not a secured party. *Shepherd*, 50 A.3d at 574 n.11. Because the plaintiff had not raised that argument in the lower courts, however, the Court of Appeals refused to consider the argument and assumed the servicer to be a holder of the note. *Id.*

plaintiff suing under the Consumer Protection Act must establish "actual injury or loss that he or she allegedly sustained as a result of the prohibited practice"); Md. Code Ann., Com. Law § 14-203 (stating that "collector who violates [Consumer Debt Collection Act] is liable for any damages proximately caused by the violation"); Md. Code Ann., Real Prop. § 7-406(a)(1) (stating that person may bring suit under Mortgage Fraud Protection Act for "damages incurred as the result of a violation of this subtitle").  By Padley's own account, the omission of Freddie Mac's identity from the NOITF caused her no harm:  She learned of Freddie Mac's ownership of her loan when it was disclosed in the April 2010 affidavit, yet she never sought to present the April 2010 and November 2010 short sale offers to Freddie Mac.  Padley thus can point to no harm caused by the defective NOITF.

   II.     Failure to Respond to Short Sale Offers

   In count five Padley alleges that SunTrust violated section 13-316(c) of the Maryland Commercial Law Article when SunTrust repeatedly failed to respond to the short sale offers presented by Padley.  That statute requires mortgage servicers to "designate a contact to whom mortgagors may direct complaints and inquiries" and further requires that contact to "respond in writing to each written complaint or inquiry within 15 days if requested."  Md. Code Ann., Com. Law § 13-316(c).  Any servicer that fails to comply with these requirements "is liable for any economic damages caused by the violation." *Id.* § 13-316(e)(1).

   Unfortunately Padley has not alleged any damages "caused by the violation" of section 13-316(c)(2).[6]  Had SunTrust (and Freddie Mac) accepted any of the short sale offers presented by Padley, everyone perhaps would have been better off.  But section 13-316 provides a remedy only for economic damages arising from servicers' silence; it does not prohibit obduracy or

---

[6] Count five also fails to state a claim because Padley did not allege that she requested written responses to her proposed short sale offers, as required by the statute.

intransigence on the part of mortgage servicers. SunTrust had no obligation to consider Padley's offers, and it owed Padley no duty to act in her best interests, even though, at least in hindsight, that may have been in SunTrust's best interests as well. Thus, even if SunTrust was obligated to respond to Padley's offers, the statute merely requires the servicer to acknowledge receipt of those offers; it mandates neither consideration nor acceptance of short sale offers. The economic loss at issue here was caused, in part, by SunTrust's decision not to accept Padley's offers, and Padley cannot identify any harm caused by SunTrust's failure to provide a written rejection of her offers. SunTrust therefore is able to escape liability on count five despite its alleged failure to comply with section 13-316(c).

Count six, which seeks damages under the Maryland Mortgage Fraud Protection Act, also will be dismissed. Section 7-402 of the Maryland Real Property Article prohibits mortgage fraud, defined in section 7-401(d) to include deliberate misstatements, misrepresentations, or omissions. Padley contends that SunTrust violated this statute when it "accepted Ms. Padley's multiple short sale offers on the pretext that each would be considered but in fact SunTrust simply ignored them." (Compl. ¶ 137(a).) Padley's allegations again belie this claim. Padley alleges that SunTrust never responded to the short sale offers that she presented; if SunTrust never responded, it made no misstatements or misrepresentations in connection with those offers. It is also wholly implausible that SunTrust intended Padley to interpret its silence as a promise to consider and possibly accept her offers. *See* Md. Code Ann., Real Prop. § 7-401(d) (defining mortgage fraud to include only those omissions made with the intent to induce reliance). Padley therefore has failed to state a viable claim under section 7-402.

III.     Request for Leave to Amend Complaint

In her opposition to the motion to dismiss, Padley requests leave to amend her complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). (*See* Pl.'s Opp. at 41.) Padley has not indicated how she would amend the complaint if given the opportunity; she simply requests leave to amend the complaint to cure any defects identified by the court. In the absence of harm and in light of the reasons for granting the motion to dismiss, it does not appear likely that Padley could cure the defective complaint, at least without impermissibly contradicting her prior allegations. Accordingly, her request for leave to amend the complaint will not be granted.

## CONCLUSION

For the reasons stated above, all six counts of Padley's complaint will be dismissed with prejudice. A separate order follows.

<u>February 13, 2013</u>                                                         <u>      /s/                                         </u>
Date                                                                                     Catherine C. Blake
                                                                                             United States District Judge